Petrik *v.* National Slovak Union (et al.,
Appellant).

Argued April 12, 1939.

Before Keller, P. J., Cunningham, Baldrige Stadtfeld, Parker, Rhodes and Hirt, JJ.

*E. A. Sefler,* for appellant.

*Julius J. Strba,* for appellee.

Opinion by Rhodes, J., June 28, 1939:

The parties are rival claimants in an interpleader framed to test their respective rights to a fund paid into court by the National Slovak Union, a fraternal benefit association incorporated under the laws of the State of Pennsylvania. In the feigned issue Josephine Petrik was plaintiff and John Balek defendant. After a verdict for defendant the court below entered judgment for plaintiff n. o. v., and defendant has appealed.

The testimony must be considered in the light most favorable to appellant. *Walters v. Kaufmann Department Stores, Inc.*, 334 Pa. 233, 5 A. 2d 559, 560. On November 21, 1916, Peter Petrik executed an application for membership in the National Slovak Union, in which he designated his wife, Josephine Petrik, appellee herein, as the beneficiary. She is a native of what was formerly Czechoslovakia. Benefit certificate No. 132 was issued to him on the same date, and was in force at the time of his death. On its face the certificate did not bear the name of any beneficiary, but on the reverse side was an endorsement to the effect that "benefits shall be paid to the beneficiary or beneficiaries entitled thereto in accordance with the constitution and by-laws of the union." On February 16, 1930, Petrik executed an instrument wherein he designated John Balek, appellant herein, who was not related to him, as the beneficiary; and this contained an affidavit by Petrik that he was dependent upon Balek. It was also signed by the president and by the officers of the local lodge, and the supreme lodge accepted Balek as the new beneficiary. The regular blank of the organization was used, and was signed by the officers as required by the by-laws. Petrik died on June 15, 1935. Two sections of the by-laws were offered in evidence, and are as follows:

"Section 97. The National Slovak Union, pays the death benefit only to such heirs to whom the death benefit was legally bequeathed and not in violation of the laws of Pennsylvania and laws of the United States. (A) The designation of the death benefit is followed only in such case when the same was forwarded to the supreme office in the life time of a male or female member, and provided it is written on a blank prepared for that purpose by the supreme office for the members of the National Slovak Union."

"Section 101. The member shall designate the payment of death benefit to his legal wife, or a wife to

her legal husband, to his children, parents, grandchildren, brothers and sisters and in case he or she has no relatives he or she can make the designation as he or she pleases. The legal heirs shall be first."

Appellant contends that, by assenting to his being named beneficiary, the Union waived any violation of its by-laws; that appellee has no standing to complain of such violation, if any; and that the designation of him as beneficiary was lawful because Petrik was dependent upon him within the meaning of section 6 of the Act of May 20, 1921, P. L. 916, 40 PS §1017.[1]

Judgment was entered for plaintiff n. o. v. upon the ground that the evidence was insufficient as a matter of law to bring appellant within the statute. We think that the record justified the submission of the issue to the jury, and that the verdict should not have been disturbed.

The testimony shows the following: In 1930 Petrik told appellant that he had been suspended by the Union for nonpayment of dues, and inquired of him whether he could secure some one to pay them. On the following Sunday Petrik went to a meeting of the society, and designated appellant as his beneficiary, with the understanding that appellant pay the dues on the benefit certificate, as Petrik was particularly interested in

---

[1] "Such death benefits in certificates hereafter issued shall be payable to wife, husband, affianced wife, or affianced husband, relative to the fourth degree of consanguinity, father-in-law, mother-in-law, son-in-law, daughter-in-law, stepfather, stepmother, stepchildren, children by adoption, or to a person or persons dependent upon the member. If, after the issuance of the original certificate, the member shall become dependent upon the charity of an individual or an incorporated charitable institution, he shall, with the consent of the society, have the privilege of making such individual or institution his beneficiary.

"Within the above restrictions, every member shall have the right to designate his beneficiary, and, from time to time, may have the same changed in accordance with the laws, rules, or regulations of the society; and no beneficiary shall have or obtain

his burial, as he did not want to be cremated. Appellant accepted, and from that time on paid the dues for Petrik. The amount so paid by appellant was at least $192. Appellant also gave Petrik $50 prior to February, 1930, and advanced him thereafter about $130, mostly for clothing and medicine. Petrik received relief from the County of Allegheny, and died at Woodville, which is described in the opinion of the court below as a public charitable institution.

Counsel for appellee states in his brief that appellee "bases her claim to the benefits on the theory that, at the time the deceased joined the society or union, he designated ...... [her] ...... as the beneficiary ...... in benefit certificate No. 132, which was subsequently issued ...... [and] was in force and effect at all times from the date of its issuance until the death of the member except for a short period about 1930 and 1933 when the member defaulted in the payment of his dues." Her other contention is "that the designation of [appellant] as beneficiary is contrary to the purposes for which the society was organized and is contrary to the by-laws and the laws of Pennsylvania relating to permissible beneficiaries and that the member was not dependent on ...... [appellant]."

---

any vested interest in the said benefit until the same has become due and payable upon the death of the said member. Any such society may, however, by its laws limit the scope of beneficiaries within the above classes.

"If any beneficiary under a certificate shall die before the member, and no new designation shall have been made by him, and the constitution and laws of the society shall have made no provisions for such contingency, the benefits under the certificate or certificates shall then be paid to the surviving beneficiary or beneficiaries, if any, and, if none of the beneficiaries named in the certificate shall survive the member, the benefits shall then be paid to the executor or administrator of the deceased member, to be by him paid over to, or divided among, the person or persons entitled to the personal estate of such deceased member under the intestate laws of the place of domicile of such member." (Repealed by Act of July 17, 1935, P. L. 1092.)

The first proposition has been rejected definitely on many occasions by this court and the Supreme Court. A certificate of a beneficial association creates no vested interest in the beneficiary named therein during the lifetime of the member to whom it was issued, he or she being a mere volunteer, having no contractual relations either with the association or the assured. *Noble v. Police Beneficiary Ass'n,* 224 Pa. 298, 301, 73 A. 336; *Stockberger v. Maag,* 121 Pa. Superior Ct. 216, 183 A. 439; *Shepler v. Pennsylvania R. Co. et al.,* 334 Pa. 257, 5 A. 2d 567; *Willison v. Willison et al.,* 123 Pa. Superior Ct. 515, 187 A. 325. A different situation exists when the beneficiary is named as the result of a contract, or, in the absence of a contract, what amounts in effect to a promissory estoppel *(Shepler v. Pennsylvania R. Co. et al.,* supra, p. 568), but that is not appellee's position in the present controversy. It is not disputed that subsequent to the original designation of appellee as beneficiary, Petrik named appellant as beneficiary, and that he remained such to the time of Petrik's death. Therefore, appellee's theory that she is entitled to recover merely because at one time she was the beneficiary is invalid, and affords no basis upon which to sustain the judgment in her favor.

It is unnecessary to decide whether or not the designation of appellant as beneficiary was invalid under section 101 of the by-laws, adopted in June, 1930, because only the Union, and not appellee could invoke such violation, if such there was, as a ground for refusing payment to appellant, and it has not done so. On the contrary, the Union has renounced all interest in this contest which began with a suit brought against it by appellee. The fund was also claimed by appellant, and by another whose claim has not been pressed. Thereupon, the Union filed its petition for a rule to show cause why the claimants to the fund should not interplead, and also prayed that it be ordered to pay the fund "less counsel fees and expenses, into court,

and be thereupon relieved of any further liability to both the plaintiff [appellee herein] and the conflicting claimants, as provided by the law and the rules of this court," and the orders of the court below granting and making absolute the rules were phrased similarly. This was necessarily so because interpleader under the existing law[2] in this state lies only when the party petitioning therefor disclaims all interest in the subject-matter; he must be a mere stakeholder, seeking to litigate no rights of his own, and the suit must be one to recover money claimed by rivals as between whom the defendant has no interest. *Fidelity Trust Co. v. William Penn Trust Co.*, 110 Pa. Superior Ct. 91, 93, 167 A. 469. The consequent effect is described by Mr. Justice DEAN, speaking for the Supreme Court, in *Pennsylvania Railroad Co. v. Wolfe*, 203 Pa. 269, at page 274, 52 A. 247, at page 248: "Concede, as argued by appellant's counsel, that a member of the association has only the power of appointment of a beneficiary, subject to the approval of the relief association, still, as between him and his appointee, equity will take cognizance of facts entering into the transaction, so that as between them flagrant wrong shall not be done. We say as between the member and his appointee, for the law is settled, that if the association insists on its legal rights under its rules, equity will not interfere between it and its members. But the relief association wholly withdraws from this contest; it pays the money into court, and in effect says, wage your war between yourselves, I will have nothing to do with it."[3]

The nomination of appellant as beneficiary was

---

[2] See Proposed Rules of Civil Procedure as to Interpleader by Defendant, Rule 2306 (c).

[3] This case was qualified by *Grant v. Faires*, 253 Pa. 232, 97 A. 1060, which held that the payment of the fund into Court did not constitute a waiver of the association's by-laws, so as to change the legal rights of claimants.

assented to by the Union; it made no objection thereto at any time, and it makes none now. If appellant was named "in disregard of the by-laws of the association, that disregard prejudiced no rights of the [appellee], for she had no rights at that time. The by-laws were made solely for the convenience and protection of the association. Regulations concerning the method of changing beneficiaries are adopted for the protection of the society, and if it has, by waiver or estoppel, lost the right to object to a change in the name of a beneficiary, no one else may raise that objection; and if a change of beneficiaries has actually been consummated and acted on by the society in the member's lifetime, the original beneficiary has no standing to attack the change, because not made in compliance with the regulations of the society": *Noble v. Police Beneficiary Ass'n,* supra, 224 Pa. 298, at page 302, 73 A. 336, at page 337.

There remains for consideration the question whether the evidence was sufficient to warrant the finding, implied in the verdict, that Petrik was "dependent upon the charity" of appellant, within the meaning of the Act of May 20, 1921, P. L. 916, §6, 40 PS §1017, supra, and appellant rendered thereby a lawful beneficiary.

Appellant had given or loaned Petrik money before February 16, 1930, when he was designated beneficiary. The reinstatement of the certificate and keeping it in force depended upon the bounty of appellant. Thereafter, in addition to the payment of the dues, appellant gave to Petrik various sums for clothing and medicine. Petrik was especially interested in preventing the benefits payable from lapsing, as under the certificate $300 was payable for his funeral expenses. We think that the evidence in this respect was sufficient to sustain the verdict. The statute does not prescribe the degree of dependency that must be shown by a beneficiary who seeks to establish his status within the scope of the provision in question. Certainly such depend-

ency need not be total. In the opinion of the court below it is stated: "Clearly, from the defendant's own testimony, the assured was not dependent for his *support or maintenance* on the defendant at the time the change of beneficiary was made." (Italics supplied.) The words previously italicized are an unwarranted addition to the statutory requirement, which is only that the member "become dependent upon the *charity* of an individual or an incorporated *charitable* institution." (Italics supplied.) The court below in its opinion quotes and relies upon the definition of the word "dependent," as found in *O'Leary et al. v. Menard et al.,* 118 Me. 25, 105 A. 399, at page 400, which is as follows: "The word 'dependent,' as used in this connection, has been defined by this and other courts. As thus judicially interpreted, it rests upon duty, not bounty; upon continuing obligation, not occasional giving; upon service imposed or undertaken, not upon favors voluntarily bestowed." This was a case involving the dependency of a beneficiary on the assured member. Under such circumstances the authorities construing "dependent" have invariably postulated the existence of obligation on the part of the member to the beneficiary. See, also, term "dependent" as used in the Workmen's Compensation Act of 1915, P. L. 736, as amended, 77 PS §1 et seq. In section 6 of the Act of 1921, "dependent" is used in connection with the words "charity" and "charitable," thereby negativing expressly the construction placed upon it in the quotation from *O'Leary et al. v. Menard et al.,* supra. The concept sought to be expressed is that of an undertaking voluntarily assumed, not one imposed by some legal, equitable, or perhaps moral principle. True, the provision in question may permit the donor to recoup part or all of what he has given, or, as in this case, he may receive something more. In this aspect there is not charity in its purest sense; but the apparent objective of the statute is to encourage the rendition of assistance to needy persons

who may possess only this means of reimbursing their benefactors to some extent. The possibility that the donor may lose little or nothing by his generosity should not be permitted to destroy what in itself is an act of charity. In the present case the evidence demonstrates that Petrik was particularly anxious that he be decently interred. One of the witnesses testified: "A. He was always afraid in case he became suspended he would not have any one to bury him,—the State might cremate the body or something, and he is a Catholic and he wanted to be buried as a good Catholic Christian." The certificate in question provided a burial fund of $300, which, according to the Union's petition to pay the balance of the fund into court, has been paid. Appellant advanced dues totaling about $192, and other sums amounting to $180, a total of approximately $372. The judgment in his favor was for $505. He has gained $133, but that result could not have been ascertained in advance. The nature of appellant's relations with Petrik may not be determined by the ultimate result, as he was not ineligible to be designated by Petrik as a beneficiary, but belonged to one of the classes named by the statute. Moreover, he was accepted by the Union as a legal beneficiary, and in reliance thereon the dues on the beneficial certificate were paid for several years prior to Petrik's death.

The evidence was sufficient to show that Petrik was dependent upon appellant, at least to the extent contemplated when the arrangement was made, and warranted the verdict of the jury.

Judgment is reversed, and the record is remitted to the court below that judgment may be entered on the verdict in favor of defendant appellant.